Argued and submitted February 10, affirmed April 3, 2003

# Chris NUFFER,
*Petitioner,*

*v.*

# MOLALLA RIVER SCHOOL DISTRICT
and Fair Dismissal Appeals Board,
*Respondents.*

## FDA 01-2; A117702

65 P3d 1111

William R. Goode argued the cause and filed the brief for petitioner.

Nancy J. Hungerford argued the cause for respondent Molalla River School District. With her on the brief were Richard Cohn-Lee and The Hungerford Law Firm.

No appearance by respondent Fair Dismissal Appeals Board.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

## BREWER, J.

Petitioner seeks review of an order of the Fair Dismissal Appeals Board (FDAB) upholding her dismissal by the Molalla River School District (the district). She assigns error to FDAB's conclusion that the district had authority to dismiss her from her position as administrator of a public charter school. She also assigns error to several of FDAB's extensive findings of fact and to its conclusion that dismissal was not an excessive remedy. We write only to address whether the district had authority to dismiss petitioner and reject her other arguments without discussion. We review FDAB's conclusion for errors of law. ORS 183.482(8)(a); *Springfield Education Assn. v. School Dist.*, 290 Or 217, 223-24, 621 P2d 547 (1980). We affirm.

Petitioner began working for the district in approximately 1992. She introduced and coordinated an "alternative education program" for the district that was designed to operate outside traditional teaching methods. The program was known as the Molalla Alternative Options School or, more commonly, MAPS. In November 1996, MAPS became a separate middle school and high school program that received federal charter school grant funds. Petitioner continued as the director of the program and as a teacher and student counselor. In September 1999, the district accepted a charter proposal from petitioner and other organizers to operate MAPS as a public charter school under ORS chapter 338.[1] Beginning in the 1999-2000 school year, MAPS purported to operate as a public charter school under Oregon law.

On February 26, 2001, a complaint by a student and her parent about petitioner's conduct led the district to order petitioner to work from home, bar her from entering MAPS property, and forbid her from contacting any MAPS students or staff during the workday. An ensuing investigation revealed evidence that petitioner had, among other things, neglected to perform work on a grant from the Oregon Department of Education and had falsely reported student

---

[1] ORS chapter 338, the Public Charter School Act, was enacted by the 1999 legislature. *See* Or Laws 1999, ch 200.

attendance, which resulted in inflated enrollment statistics. On June 6, 2001, the district's board dismissed petitioner.[2] Petitioner appealed to FDAB, which upheld the district's decision.

■ On review, petitioner argues that the district lacked the authority to dismiss her. She relies on ORS 338.135(2), which provides:

> "A public charter school or the sponsor of the public charter school may be considered the employer of any employees of the public charter school. If a school district board is not the sponsor of the public charter school, the school district board shall not be the employer of the employees of the public charter school and the school district board may not collectively bargain with the employees of the public charter school. *The public charter school governing body shall control the selection of employees at the public charter school.*"

(Emphasis added.) Petitioner argues that the statute indicates that there is a difference between a public charter school's sponsor, in this case the district, and its governing body. She asserts that, under the statute, only the public charter school's governing body, in this case MAPS's governance committee, is authorized to hire and fire its employees.

The district responds that petitioner's employment was not subject to the charter school statutes because MAPS did not lawfully operate as a public charter school. It further argues that, even if the charter school statutes apply, ORS 338.135(2) accords to a charter school's governing body control over the selection of employees only if a school district is not the school's sponsor. Finally, the district argues that any such control by the governing body is limited to the "selection" of employees, and it does not extend to their dismissal.

■■ Essential to petitioner's position is the premise that MAPS was subject to the charter school statutes when the district dismissed her. Accordingly, we begin our analysis with that issue, which involves the meaning of ORS 338.035(2). That statute provides:

---

[2] The district closed MAPS at the end of the 2000-2001 school year.

"Before a public charter school may operate as a public charter school it must:

"(a)    Be approved by a sponsor;

"(b)    Be established as a nonprofit organization under the laws of Oregon; and

"(c)    Have applied to qualify as an exempt organization under section 501(c)(3) of the Internal Revenue Code."

We examine the text of the statute in context and, if necessary, its legislative history and other aids to construction. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). Statutory context includes other provisions of the same statute and other related statutes. *Id.* at 611.

ORS 338.035(2)(b) requires a school to be "established as a nonprofit organization under the laws of Oregon" before it "may operate as a public charter school." "Establishment" of a nonprofit organization under Oregon law requires a legal process.[3] Petitioner concedes that MAPS was not established as a nonprofit organization under Oregon law when she was dismissed and that it therefore failed to comply with ORS 338.035(2)(b). However, petitioner contends that establishment as a nonprofit organization is required solely to *operate* as a public charter school. She acknowledges that MAPS could not *operate* as a public charter school when she was dismissed, but she argues that it nevertheless *was* a public charter school at that time. It follows, she reasons, that the district had no authority to dismiss her.

Petitioner's view finds some superficial contextual support in the public charter school statutory framework. ORS 338.035(1) provides that "[a] public charter school may be *established*" as a new school, from an existing public school, or from an existing alternative education program.

---

[3] The incorporation of nonprofit organizations is governed by ORS chapter 65. In particular, ORS 65.051(1) provides that, "[u]nless a delayed effective date is specified, the corporate existence begins when the articles of incorporation are reviewed, accepted and filed by the Secretary of State."

Petitioner concedes that MAPS had not been incorporated when she was dismissed. Because she does not assert that MAPS had been "established" by a means other than incorporation, we need not consider whether a nonprofit organization may be lawfully established by any other means.

(Emphasis added.) Similarly, ORS 338.065(1) provides that the charter executed by the sponsor and the charter school governing body "shall act as the legal authorization for the *establishment* of the public charter school." (Emphasis added.) Furthermore, ORS 338.035(2) provides that, "[b]efore a *public charter school* may operate as a public charter school," it must meet the requirements mentioned above. (Emphasis added.) The foregoing provisions, in combination, arguably could be construed to mean that a public charter school can exist as such before it begins to operate. If that understanding were correct, petitioner's argument might have merit.

█        However, the legislature provided a specific definition of "public charter school" in ORS 338.005(2): " 'Public charter school' means an elementary or secondary school offering a comprehensive instructional program *operating* under a written agreement entered into between a sponsor and an applicant and *operating* pursuant to this chapter." (Emphasis added.) That statute makes clear that a school must *operate* pursuant to ORS chapter 338 to be regarded as a "public charter school." Because MAPS had not satisfied a statutory prerequisite to operation as a public charter school, namely, establishment as a nonprofit organization under Oregon law, it was not a public charter school when petitioner was dismissed. Therefore, ORS 338.135(2) is inapplicable to this proceeding.[4] It follows that FDAB did not err in concluding that the district had the authority to dismiss petitioner.

Affirmed.

---

[4] Because our conclusion disposes of the issue of the district's authority to dismiss petitioner, we need not decide whether a sponsoring school district has authority to dismiss employees of properly established public charter schools.